[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an action for dissolution of marriage brought to the Waterbury Superior Court.
The court finds that it has the requisite jurisdiction to proceed to judgment in this matter. The court further finds that the allegations in the complaint are proven and are true including the allegation that the marriage has broken down irretrievably. Having heard the evidence and testimony and having taken into consideration the provisions of Sections 46b-81,46b-82, and 46b-84, Connecticut General Statutes, the court makes the following findings and orders:
The parties were married at Watertown, Connecticut on September 22, 1989.
There are two minor children issue of the marriage, Kristen Quatrano born January 1, 1990 and Matthew Quatrano born December 17, 1991.
The plaintiff-wife graduated from Sacred Heart H.S. in 1982. She enjoys generally good health, but testified that she suffers from an injury to her shoulder which previously resulted in CT Page 52 workers' compensation benefits to her.
She is currently employed as a scanning clerk by LaBonne's Supermarket where she has worked for the past seven years. She reported her gross weekly income to be $197.00, which nets her $159.00 per week.
Prior to her current employment, the plaintiff was employed in her parents' 7-11 Store as "assistant manager" and she earned about $500.00 per week. That title and the generous salary were due, in large part, to the largess of her parents who owned the store and was not likely to be matched by any other employer. Most of this employment was prior to the marriage. During the marriage the plaintiff occasionally sold Avon products. The normal arrangement was for the plaintiff to maintain the home and care for the two children during the day and the defendant would care for the children when he got home while the plaintiff worked in the evening.
The defendant is 32 years old, he is a graduate of Watertown High School and is in good health. He has been employed as a fuel mechanic by John J. Brennan Construction Co. for the last four years.
In early 1997 the defendant sustained what he described as an ACL ligament injury to his left knee which kept him out of work for approximately three months and necessitated surgery on his knee. During that time he received approximately $545.00 per week in workers' compensation benefits.
Notwithstanding the defendant's financial affidavit, evidence was offered at trial which permits a finding that for the 13 weeks prior to the trial the defendant's total gross income from his employment was $8,986.27, which averaged out to $691.25 gross weekly income (Pltf. Ex. 4).
He reported a gross weekly income of $731.00 on his financial affidavit which he claimed netted him $449.00 per week.
The defendant's total gross wages with the same employer for the comparable period in 1996 (June 16 through September 8) was $13,548.39 — a difference of $4,562.12 for those 13 weeks (Pltf. Ex. 4).
On a weekly basis, his average gross income was $1,042.18 — a CT Page 53 difference of $350.93 more than his reported 1997 gross weekly income (Pltf. Ex. 4).
To explain the sizable reduction in current income over one year, the defendant offered the testimony of David Brennan, an officer of the defendant's employer. He testified that the defendant's pay was so much less than in 1996 because the company was "downsizing" and because it had hired additional employees to avoid having to pay the defendant — and many other employees — the overtime that had been a considerable factor in their weekly pay.
This action was filed on September 11, 1996. The defendant's gross weekly income has not exceeded $1,000.00 even once since that date. This despite the fact that his gross pay exceeded $1,000.00 for 10 of the 13 weeks immediately preceding the filing of this suit (Pltf. Ex. 4).
The defendant's net pay was also considerably higher, on average, in 1996 than what the defendant reports for 1997. There are two particular reasons for the discrepancy.
First, the defendant elected to increase his federal tax withholding to effectively twice what it had been in 1996 starting with his January 26, 1997 paycheck. By way of comparison, his November 24, 1996 paycheck was for 40 hours plus 12 hours overtime and resulted in a gross pay of $855.44 from which $73.61 was deducted for federal taxes. That same 52 hour workweek ending June 8, 1997 resulted in the same gross pay of $855.44, but the federal tax withholding doubled to $151.30.
Secondly, the defendant, in June 1997, began to make a $94.18 weekly contribution for "medical/dental". The amount throughout 1996 had been $45.00 per week. He testified he did that to repay the benefits he had received. Taken together, those increases reduced his net income on $855.44 from $643.32 to $525.88 — a difference of $117.44 net income for the same amount of work. (Pltf. Ex. 4).
The defendant's average weekly gross income for 1994, 1995 and 1996 was $44,514.02 or approximately $856.04 per week. (Pltf. Ex.s 1, 2 3).
The court finds the evidence and testimony offered by the defendant concerning his actual earnings to be less than CT Page 54 credible. The court finds the defendant's earning capacity to be $850.00 per week. As evidenced by his own earnings history (Pltf. Ex. 4), $850.00 per week, at the rate of withholdings existent before increases by the defendant changed his withholdings, would have resulted in a net weekly income of approximately $640.00 per week (see Pltf. Ex. 4 p. 5 — week ending 12/08/96).
The court finds the defendant's net weekly income to be $640.00 and the plaintiff's net weekly income to be $159.00 for a combined net weekly income of $799.00 per week.
In regard to the marital assets, the primary dispute is in regard to the marital residence. Title to that real property is in the defendant alone and has been his alone since the date of the marriage and before. By way of history, the land was owned by the defendant's grandfather and was a gift to the defendant before the marriage. The grandfather also paid off an encumbrance to the Thomaston Savings Bank on the property. He and the defendant's father gave the defendant approximately $40,000.00 for building materials. The defendant acted as general contractor, subcontracting out skilled work to contractors and he personally did much of the laborer's work on the house including excavation, footing drains, blacktop work, painting and siding. He testified that a majority of the appliances were purchased with money given by his family. The plaintiff testified that before and after the marriage she also put in considerable work involving the completion of the interior and its decoration.
Evidence permits a finding that before the marriage both of the parties experimented with drugs and that the defendant continued to do so during the marriage despite repeated promises to the plaintiff that he would stop. The defendant made a number of efforts to stop including participation in counselling. His drug use and the arguments and disputes which resulted from it were a substantial factor in the breakdown of the marriage.
ORDERS
Having made the foregoing findings, the court enters the following orders:
A. The marriage of the parties to this action is hereby dissolved on the grounds of irretrievable breakdown and each of the parties is declared to be single and unmarried. CT Page 55
B. The court enters the following orders by way of custody, visitation and support:
1. The parties are to enjoy joint legal custody of their minor children Kristen, born January 1, 1990 and Matthew, born December 17, 1991.
 2. The primary residence of the said minor children shall be with the plaintiff-mother.
 3. The defendant-father shall have reasonable and liberal visitation with said minor children.
 4. The defendant-father shall pay to the plaintiff-mother support for the minor children in the amount of $225.00 per week.
 5. The defendant-father is to provide medical insurance for the benefit of the minor children as it is available to him through his employment. Any uninsured or unreimbursed medical, dental or other necessary expenses incurred for the benefit of the minor children shall be shared equally by the plaintiff and defendant.
C. By way of periodic alimony:
 1. The defendant is to pay to the plaintiff the sum of $75.00 per week as periodic alimony. That obligation shall continue until the earliest of the following events:
a. The death of the plaintiff;
b. The death of the defendant;
c. The remarriage of the plaintiff;
d. Cohabitation by the plaintiff, as defined by statute;
e. January 21, 2006.
D. By way of property distribution:
1. As regarding the marital residence, 351 Neill Drive, Watertown, Connecticut:
a. The defendant is to convey all of his right, title and interest in and to said real property to the plaintiff CT Page 56 forthwith. The plaintiff shall be responsible for all costs associated with said real property including the mortgage, taxes, insurance, and maintenance costs. Any major repairs or maintenance costs in excess of $500.00 shall be stipulated to by the parties and consent shall not be unreasonably withheld. The parties shall share equally such costs.
b. The defendant shall have the right of first refusal to purchase said premises at a price mutually agreed upon by the parties or as determined by a real estate appraiser mutually agreed upon.
c. Upon the sale of the said residence, including sale to the defendant, the defendant is to receive or be credited with an amount equal to sixty five (65%) per cent of the net proceeds of such sale. The plaintiff shall receive the remaining thirty five (35%) of said net proceeds. The plaintiff is not to refinance said residence without an order of this court upon notice to the defendant or by written stipulation of the parties.
d. If said property has not previously been sold or conveyed to the defendant, the said residence shall be listed for sale December 1, 2009 at a price agreed upon by the parties and the net proceeds of any resulting sale shall be divided as set forth in paragraph D.1 c) hereinabove.
e. The parties are free at any time to stipulate in writing to any other mutually agreed proposal concerning the retention, sale or transfer of said residence, subject to subsequent approval of this court.
2. By way of distribution of personal property:
a. The defendant shall assign to the plaintiff by Qualified Domestic Relations Order (QDRO) one half (1/2) of his interest in his Putnam Growth IRA and his Putnam Health IRA.
b. The mutual funds (Putnam Health) listed on the defendant's financial affidavit shall be held in trust for the parties' minor children. Said funds shall not be withdrawn, pledged, encumbered, assigned or depleted by either party except by written stipulation and the approval of this court.
c. The defendant shall pay to the plaintiff one half (1/2) of any award he may receive for his pending personal injury CT Page 57 claim. The plaintiff shall have a lien for one half (1/2) of any such payment.
d. The defendant shall retain the 1192 Stratos 19 foot boat and shall hold the plaintiff harmless from the Watertown Credit Union loan and any other loans on said boat.
e. The parties shall each retain possession of the motor vehicles listed on their respective financial affidavits and shall hold the other harmless from any claims related to said vehicles.
f. The parties are to share equally the household contents. If they cannot agree as to the division of said contents, they shall participate in negotiations facilitated by the Family Relations Office. Any unresolved claims shall be presented to this court.
E. By way of miscellaneous orders:
1. The defendant shall cooperate with the plaintiff's effort to obtain COBRA benefits through his employer. The defendant is to contribute thirty-five (35%) per cent of the cost incurred by the plaintiff for such coverage.
2. The defendant is to name the minor children as irrevocable beneficiaries on his existing life insurance listed on his financial affidavit to be in the total amount of $45,000.00.
3. Each of the parties is to be solely responsible for the debts and liabilities listed on their respective financial affidavits, except as otherwise provided in this judgment, and they are to hold the other harmless in regard to such debts and liabilities.
4. Each of the parties shall claim one minor child as an exemption for federal taxes. The plaintiff shall file in 1997 as head of household.
5. Each party shall be responsible for their own counsel fees.
6. Each party is ordered to provide the other with a copy of their respective federal income tax return within 15 days after such return has been filed. This order is to continue in effect CT Page 58 so long as the defendant is required to pay support and/or alimony.
7. The defendant's financial obligations shall be secured by a contingent wage execution, there being no evidence that he will not meet those obligations as the come due.
By The Court,
/s/ Joseph W. Doherty Joseph W. Doherty, Judge